**U.S. FIRE INSURANCE COMPANY et al., Plaintiffs,**

v.

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al., Defendants.**

Civ. A. No. 79–1290.

United States District Court,
District of Columbia,
Civil Division.

July 3, 1979.

A. Tupper Brown, Washington, D.C., for plaintiffs.

Judith S. Scolnick, Trial Atty., Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

This is an action for declaratory and injunctive relief brought by a number of insurance companies against various govern-

ment agencies and officials, including the Federal Insurance Administrator. Plaintiffs' claim is that Defendants unlawfully terminated certain of their insurance contracts under the federal riot reinsurance program established by the Urban Property Protection and Reinsurance Act of 1968, as amended, 12 U.S.C. § 1749bbb et seq. Presently before the Court are the parties' cross motions for summary judgment.[1]

The Urban Property Protection and Reinsurance Act was enacted by the Congress in 1968 after a rash of civil disorders led it to conclude that the lack of adequate reinsurance coverage in inner city areas was contributing to their deterioration since heavy losses sustained by private insurance companies as a result of the disorders jeopardized their ability to provide property protection insurance for them. Under this statute, the Federal Insurance Administration, an agency of the Department of Housing and Urban Development, is authorized to provide riot reinsurance to private insurers subject to certain terms and conditions, one of which is that the particular state in which the company operates establish a federally-approved plan to provide Fair Access to Insurance Requirements (FAIR).

On September 1, 1978, the Administrator offered such reinsurance to insurance companies under a standard contract for the year October 1, 1978, to September 30, 1979, and issued a list of 26 states and the District of Columbia which were deemed eligible to participate in the program. On September 15 and 18, 1978, the various Plaintiffs accepted this offer. Thereafter, and presumably in reliance thereon, they wrote property insurance policies, apparently amounting to several billions of dollars, in a number of states. Upon payment of the appropriate premiums, these policies became federally reinsured under the Administrator's standard contract.

On October 15, 1978, after Plaintiffs had entered into these reinsurance contracts, Congress enacted the so-called Holtzman Amendment, P.L. 95–557 § 307, 12 U.S.C. § 1749bbb–3, which, in addition to changing the composition of the boards of directors of the agencies administering the state plans, requires that no risk within a plan may be insured at a rate higher than the rates set by the principal state-licensed rating organizations. Several months after the enactment of this Amendment, the Administrator determined that the States of Iowa, Minnesota, Missouri, New York, and Virginia, do not meet the requirements of the Amendment and she subsequently advised Plaintiffs that their federal riot reinsurance with respect to these five states was terminated as of March 7, 1979. Following an exchange of correspondence, in which the parties took opposing positions with respect to the Administrator's authority to terminate the reinsurance contracts prior to their specified termination dates, Plaintiffs brought this action.

The sole issue before the Court is whether Plaintiffs are entitled under the statute to a continuation of federal riot reinsurance coverage through the life of their contracts, e. g., through September 30, 1979, on insurance policies issued prior to March 7, 1979.[2]

The provisions of the Act which bear most directly upon this question are sections 3, 7 and 9.

Section 3 of the Act, 12 U.S.C. § 1749bbb–3, provides that insurance companies are entitled to purchase federal riot reinsurance only if the state in which the primary policy is written has in effect a suitable FAIR plan. Prior to the enactment of the Holtzman Amendment, such plans, in order to be acceptable under the Act, had to meet ten conditions, set forth in

---

1. On May 11, 1979, Plaintiffs moved for a preliminary injunction. On June 8, 1979, this Court heard oral argument on that motion, and at that time the parties addressed the same questions presented in their summary judgment motions. The Court's disposition today renders the motion for preliminary injunction moot.

2. No issue has been raised as to Plaintiffs' entitlement to federal riot reinsurance on policies issued in these states subsequent to March 7, 1979, or their entitlement to reinsurance of policies subsequent to September 30, 1979, of policies previously issued.

different subparagraphs of section 3(b). All of the states involved in this litigation were and are in compliance with these provisions.

On October 31, 1978, however, the Holtzman Amendment added an eleventh condition to section 3(b) which states:

> (11) Notwithstanding any other provision of this section, on and after January 31, 1979, no risk within the plan shall be insured at a rate higher than the rates or advisory rates set by the principal State-licensed rating organization for essential property insurance in the voluntary market; except that this provision shall not be deemed to prohibit the application to any such risk, on a nondiscriminatory basis, of condition charges for substandard physical conditions within the control of the applicant for insurance as set by the principal State-licensed rating organization for the voluntary market.

Both parties agree that the plans of the aforementioned five states do not meet the requirements of this eleventh condition. Defendants contend that in view of the failure of the five states to amend their plans to comply with the Holtzman Amendment, the Administrator was required to terminate all of their federal riot reinsurance, including those policies which have already been reinsured. In reaching this conclusion, the Administrator essentially relied on the provision that "no risk shall be insured" on and after January 1979, and determined that this provision effects an automatic and self-executing cut-off of federal riot reinsurance in states whose plans are not in compliance.

Section 7 of the Act, 12 U.S.C. §§ 1749bbb–7, contains the Act's sanction provisions. Thus, Section 7(c) directs that "[n]o reinsurance shall be *offered* to any insurer or pool in a State . . . unless there is in effect in such State a [FAIR] plan . . ." (emphasis added). This, Plaintiffs argue, indicates that the only sanction available in the event of the failure of a state to enact or maintain an acceptable plan is that no new riot reinsurance may be offered or written after the time that the state is determined not to be in compliance, and that it therefore negates any inference that existing insurance may be terminated as a consequence of such noncompliance.

Finally, section 9 of the Act, 12 U.S.C. § 1749bbb–9, explains the conditions under which federal riot reinsurance may be terminated prior to the end of a policy year. Plaintiffs claim that since this section does not explicitly include the failure of a state to maintain a suitable FAIR plan among those conditions, termination is not required or permitted on account of such a failure.

While the statutory provisions do not illuminate the congressional purpose as precisely as one might wish, it is the Court's conclusion that the construction proposed by the Plaintiffs is correct with respect to the issue presented in this litigation.

No one disputes that if a state plan fails to comply with one or more of the first ten subparagraphs of section 3(b) the only sanction available to the Administrator is to refuse to offer new federal riot reinsurance in the offending states when the existing one-year contracts expire. Defendants' attempt to distinguish a failure to comply with the eleventh subparagraph (the Holtzman Amendment), however, based on its provision that "after January 31, 1979, no risk within the plan shall be insured" in case of such a failure, is not persuasive.

■ It is clear that under the Holtzman Amendment, no new federal riot reinsurance policies may be written in noncomplying states subsequent to January 31, 1979; it is certainly not clear, however, that Congress intended to enact a self-executing cut-off with respect to existing insurance. The language of the Amendment itself is at least as susceptible to the interpretation that subsequent to January 31, 1979, no new reinsurance contracts shall be entered into as it is to the construction adopted by

the Administrator.[3] Had the Congress wanted to do more than to simply add a new condition to the ten conditions already required of state plans, placement in section 7 (the sanction provision) or section 9 (the termination provision) would have been far more logical than placement in a section having nothing to do with sanctions or terminations.[4]

██ The words of the Holtzman Amendment, their placement in the statute, and the remainder of the statutory provisions, lead the Court to conclude that defendants erred when they purported to cancel the federal riot reinsurance here in question.[5] Reasonably construed as a whole, the statutory scheme presently requires that reinsurance contracts entered into subsequent to the adoption of the Holtzman Amendment include fair rate provisions, but causes for termination or other sanctions are governed by sections 7 and 9.

Defendants argue that the Holtzman Amendment was designed to make essential property insurance available at reasonable or fair, rates, and that this beneficial purpose can be achieved only by the construction they have adopted. While, to be sure, the amendment has the laudable purpose of lowering property insurance rates for urban areas, it would be erroneous to construe the amendment retroactively to affect existing reinsurance contracts. That purpose can, and by means of effective enforcement by Defendant presumably will, be attained with respect to further insurance contracts. But the attempt to achieve that purpose with respect to existing reinsurance contracts would expand and distort the statutory scheme beyond reason.[6]

It may be worthy to note that the failure to change the insurance rates in question must be laid at the doorstep not of these Plaintiffs but of the five states involved. Yet it is these Plaintiffs who, under the

3. In this regard, in a memorandum dated December 1, 1978, the Assistant Administrator for Urban Property Insurance, Riot and Crime, wrote to the Deputy Federal Insurance Administrator as follows:

The word "insured" in the phrase "no risk within the plan shall be insured" has a possible double meaning. As a passive verb it means that the FAIR Plan shall not insure (i. e., write a policy) at a rate higher than the voluntary market rate. As an adjective it would mean that no risk protected under a FAIR Plan shall on January 31, 1979, be insured under a policy whose annual premium is in excess of the voluntary market rate regardless of whether the policy was written before or after January 31, 1979. While such a retroactive impact would be consumer oriented in a case such as this where the premium will be reduced, the precedent would certainly be anti-consumer if extended to other situations where a premium is increased. When the Federal Crime Insurance Program reduced its rates in 1972 insureds were encouraged to cancel and rewrite and returns of premiums were made on a pro rata rather than a short rate basis. That would appear to be an approach more consistent with contract procedures. If FAIR Plans consider a retroactive procedure to be more advantageous from an administrative standpoint, we would have no reason to question such a step. However, I do believe the statutory language is sufficiently clear to justify our concluding that FAIR Plans which do not make a retroactive adjustment of premium are not in compliance with the Holtzman

Amendment if they reduce their rates on policies written on and after January 31, 1979.

4. It may be noted in this connection, too, that the eleventh provision states that its purposes shall be achieved, "notwithstanding any provision of this section," i. e., section 3, rather than "notwithstanding any provision of the Act," i. e., the entire statute including sections 7 and 9. Had the latter language been used, defendants might be on somewhat firmer grounds.

5. Regulations issued by the Administrator and the terms of the reinsurance contracts also support that construction, although 24 C.F.R. § 1906.36(b)(3) provides that reinsurance may be cancelled if the Administrator has found that a state plan is not complying with the regulatory criteria, section (c) of the same provision as well as section XII of the contract go on to state that "notwithstanding the foregoing provision, reinsurance may at the election of the company be continued" for the policy term, provided only that appropriate premiums are paid. Plaintiffs have attempted such an election here to no avail.

6. Defendants rely on legislative history attesting to the importance of the Holtzman Amendment, and on a statement by its author that "[w]ithout passage [of the amendment], the commitment of billions of dollars in funding and mortgage financing to our urban areas will be meaningless." 124 Cong.Rec.H. 7128 (daily ed. July 21, 1978). That history sheds no light on the effective date of the provision in relation to existing reinsurance commitments.

Administrator's interpretation of the statute, will be left without adequate reinsurance [7] in the event of major riots or disturbances, and it is their insured who may be injured if adequate coverage cannot be provided.[8]

Accordingly, it is this 3rd day of July, 1979,

ORDERED that Plaintiffs' motion for summary judgment be and it is hereby granted and Defendants' motion for summary judgment be and it is hereby denied, and it is further

ORDERED that Defendants be and they are hereby enjoined from terminating, prior to October 1, 1979, federal riot reinsurance coverage for insurance policies which Plaintiffs issued, and which therefore became insured, prior to Defendants' announced termination of federal riot reinsurance as of March 7, 1979, with respect to the States of Iowa, Minnesota, Missouri, New York and Virginia, and it is further

DECLARED that Defendants' refusal to continue in effect such federal reinsurance on such insurance policies in such states is unlawful, invalid, and void under the Urban Property Protection and Reinsurance Act of 1968, as amended, and that federal reinsurance of all policies issued prior to March 7, 1979, under the law continues in full force and effect in such states to and including September 30, 1979, unless the conditions of 12 U.S.C. § 1749bbb–9 are met.

---

7. Testimony was given at the hearing on plaintiffs' motion for preliminary injunction as to the efforts made by Plaintiffs to secure reinsurance from Lloyd's of London among others, and of the unavailability of such reinsurance from such sources in amounts and on terms comparable to those offered by the federal government under this statute.

8. The insured property owners will hardly benefit if their insurance coverage turns out to be a hollow promise on account of the absence of adequate reinsurance. Moreover, as the Administrator said in her letter to the New York State Superintendent of Insurance of January 17, 1979, the absence of federal riot reinsurance has the effect of "creating a need to increase the insurance rates paid by the consumer to offset the additional cost of reinsurance" and of leading "inevitably to increased redlining and an even tighter voluntary market in New York." While this letter was written in an effort to persuade the New York authorities to accede to the Holtzman Amendment rates, its predictions will nonetheless come true under the Administrator's decision of March 7, 1979.